1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                            )
ABDIRIZAQ EGE, ABDIRAHIM FARAH,      )     No. C16-1167RSL
and ABDULKADIR HASSAN, and on behalf  )
of other members of the general public similarly)
situated,                                   )
                                            )
                    Plaintiffs,             )
            v.                              )
                                            )     ORDER GRANTING
                                            )     DEFENDANT'S MOTION TO
EXPRESS MESSENGER SYSTEMS, INC., a   )     DISMISS IN FAVOR OF
Delaware corporation doing business as      )     ARBITRATION
ONTRAC; and DOES 1 through 100, inclusive, )
                                            )
                    Defendants.             )
_____)

This matter comes before the Court on "Defendant's Motion to Dismiss, or in the

Alternative, to Stay Proceedings and Compel Arbitration." (Dkt. # 6). Having reviewed the

memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

## BACKGROUND

Between October 2011 and May 2014, the Plaintiffs – a putative class of commercial

truck drivers – each entered into an Owner/Operator Agreement ("Agreement") with

Subcontracting Concepts CT LLC ("SCI"), which is not a party here. The Agreement outlines

the Plaintiffs' obligations to SCI and to the "[Plaintiffs'] customers," defined as companies that

"provide logistical support for the delivery of tangible items." *See e.g.*, (Dkt. #7), ¶ 12.  In

reality, when Plaintiffs began to perform under the Agreement, they only delivered packages for

ORDER GRANTING MOTION TO DISMISS

one company, Defendant[1] Express Messenger Systems, Inc., doing business as OnTrac. (Dkt. # 1), ¶ 26.

While Plaintiffs and SCI were the only signatories, the Agreement defined the rights and responsibilities Plaintiffs would have in their relationship with logistics companies like Defendant. Under the Agreement, Plaintiffs assumed several direct obligations to their logistics company customers. Plaintiffs agreed to indemnify customers, to grant customers the right to subrogate claims against them, and to notify customers within four hours if Plaintiffs were involved in any accidents. (Dkt. # 7), ¶¶ 13, 18, 19.

Plaintiffs claim that Defendant exerted such control—from setting the number of deliveries to specifying Plaintiffs' routes—that Defendant and SCI acted as joint employers, and that Plaintiffs functioned as employees rather than independent contractors. *See e.g.* (Dkt. # 1), ¶¶ 4, 5, 17, 23, 26. Plaintiffs' work conditions, as described by the Complaint, were a departure from the terms Plaintiffs accepted in their contract with SCI. Under the Agreement, Plaintiffs had the "right, in their discretion, to accept or reject assignments from Customers" and were "free to select their own routes or the order of their deliveries." (Dkt. #7), Ex. 2, ¶¶ 14, 16.

In case of disputes, the Agreement contains an arbitration provision that states, in relevant part:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. . . . If resolution of the dispute, claim, question or disagreement is not reached within a period of 60 days, then upon notice by either party . . . disputes, claims, questions or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner / Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act.

---

[1] Plaintiffs also brought claims against unspecified "Does 1 through 100, inclusive," seeking leave of the Court to determine the identities of the Does. (Dkt. # 1). For the purposes of this Order, the Court will treat the Defendants as a single entity, OnTrac.

ORDER GRANTING MOTION TO DISMISS -2-

> Neither you nor SCI shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.

(Dkt. #7), Ex. 2, ¶ 26. At issue is whether the arbitration provision applies to Plaintiffs' claims against Defendant, who did not sign the Agreement.

Plaintiffs filed the instant action, bringing various wage claims under four statutory provisions of Washington law: RCW 49.12 *et seq*. (Washington's Industrial Welfare Act ("IWA")); RCW 49.46. *et seq*. (Washington's Minimum Wage Act ("MWA")); RCW 49.48.010 (Washington's Wage Collection Act ("WCA")); and RCW 49.52.050.  Plaintiffs claim that Defendant intentionally misclassified them as independent contractors, rather than employees. (Dkt. #1). In so doing, Defendant avoided paying Plaintiffs minimum wage and overtime, and Defendant did not provide Plaintiffs with the ten-minute rest breaks and thirty-minute lunch periods owed to employees under Washington law. (*Id.*),  ¶¶ 2, 34-37.

Defendant argues it is a third-party beneficiary to the Agreement between Plaintiffs and SCI, and therefore the arbitration provision in the Agreement applies to Plaintiffs' wage and employment claims.  Defendant therefore moves the Court to stay the action and compel arbitration or, in the alternative, dismiss Plaintiffs' claims in favor of arbitration.

## DISCUSSION

### A. Standard

"Federal Rule of Civil Procedure 12(b)(3) provides for dismissal based on improper venue." *Brennan v. Opus Bank*, No. C13-94RSM, 2013 WL 2445430, at *3 (W.D. Wash. June 5, 2013). "'An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" *Brennan*, 2013 WL 2445430, at *3 (quoting *Scherk v. Alberto–Culver*, 417 U.S. 506, 519 (1974)). Motions to enforce forum selection clauses may be brought under Rule 12(b)(3). *Id*. When a motion to enforce a forum selection clause is brought, the plaintiff carries the burden of showing that venue is proper. *Id*. Further, "[u]nder the ... standard for

resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis." *Id*. (quoting *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

A motion to compel arbitration must be granted if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). There is no dispute that there is a valid agreement to arbitrate between Plaintiffs and third-party SCI. The issues here are: (1) whether Defendant is a third-party beneficiary so that the arbitration agreement applies to the parties and, if so, (2) whether the arbitration agreement covers the wage and employment claims Plaintiffs bring against Defendant.

**B. Third-Party Beneficiary**

Defendant argues it is a third-party beneficiary of the Agreement between Plaintiffs and SCI, and may therefore compel arbitration. "[T]raditional principles of state law" determine whether a "contract [may] be enforced by or against non-parties to the contract through…third-party beneficiary theories…." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citation and internal quotation marks omitted).

As a threshold matter, the Court must determine which law to apply to this motion. The parties agree that Washington State contract law applies. (Dkt. # 17), at 4-5 n.1; (Dkt. # 18), at 2 n.2. But Defendant requests a determination of its rights based on the Agreement, which contains a choice of law provision that applies the laws of the State of New York. (Dkt. # 7), Ex. 2, ¶ 23. *See also* (Dkt. #6), at 9. ("Plaintiffs' misclassification claim and all claims that relate to the alleged relationship between OnTrac and Plaintiffs…arise from Plaintiffs' Owner Operator Agreements with SCI.")

Washington courts "interpret contract provisions to render them enforceable whenever possible," and "'generally enforce contract choice of law provisions.'" *Schnall v. AT & T Wireless Servs., Inc.*, 171 Wn. 2d 260, 266 (2011) (quoting *McKee v. AT&T Corp.*, 164 Wash.

2d 372, 384 (2008)). "To effectively void a choice of law provision, a court must find that the chosen state has no substantial relationship to the parties *or* that the application of the chosen law would be contrary to a fundamental policy of Washington." *Id.* at 267. Further, Washington courts have also adopted the 'significant relationship' test…which gives great weight to the place where the parties' relationship was centered." *Id.*

In this case, neither party appears to have a substantial relationship to New York. Plaintiffs are all residents of Washington, and Defendant is a Delaware corporation, doing business solely in the western states. (Dkt. #1), ¶ 10-12; (Dkt. #6), at 2.  Further, the parties' business dealings were conducted in Washington. The Court will therefore apply Washington law.

"Under Washington state law, 'both contracting parties must intend that a third-party beneficiary contract be created.'" *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (quoting *Postlewait Const.*, *Inc. v. Great Am. Ins. Companies*, 106 Wash. 2d 96, 99 (1986)). "[T]he key is ... whether performance under the contract would necessarily and directly benefit that party." *Rajagopalan*, 718 F.3d at 847 (quoting *Postlewait*, 106 Wash. 2d at 99). "If the terms of the contract necessarily require the promisor to confer a benefit upon a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." *Lonsdale v. Chesterfield*, 99 Wash. 2d 353, 361 (1983) (emphasis omitted) (quoting *Vikingstad v. Baggott*, 46 Wash. 2d 494, 496-97 (1955)).  The party seeking third-party beneficiary status bears the burden of proving the "contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999).

Performance under the Agreement required Plaintiffs to confer a benefit on its customers, including Defendant.  Plaintiffs themselves describe their work for Defendant under the Agreement as "an integral part of [Defendant]'s business." (Dkt. #1), ¶¶ 30, 31; *see also* (*Id.*), ¶ 4 ("Plaintiffs and class members' work, i.e. delivering parcels, is…not … an incidental or

1    tangential part of Defendant[]'s operations, but rather is central to Defendant[]'s business.") And

2    several provisions in the Agreement contemplate specific promises to the Defendant: Plaintiffs

3    agreed to indemnify any logistics company customers, to grant customers the right to subrogate

4    claims against them, and to notify customers within four hours if Plaintiffs were involved in any

5    accidents. (Dkt. # 7), ¶¶ 13, 18, 19.

6          Plaintiffs argue that Defendant was merely an incidental beneficiary of the Agreement,

7    because reference in the Agreement to logistics company customers is "generic" and "oblique."

8    (Dkt. #4), at 4. But Defendant is a third-party beneficiary because performance under the

9    Agreement required the parties to confer a benefit upon Defendant; it is unnecessary that

10   Defendant be cited in the Agreement by name. *See e.g.*, *Wood Products Co. v. Tri-State Const.,*

11   *Inc*., No. C04-2052Z, 2005 WL 1126928, at *6 (W.D. Wash. May 9, 2005); Restatement

12   (Second) of Contracts § 308 (1981) ("there is no requirement of identification prior to the time

13   for enforcement of the right."). "Under the terms of the contract, [Plaintiffs] could not fully

14   perform [their] promise[s] to [deliver packages] without directly benefitting the [Defendant]."

15   *Lonsdale*, 662 P.2d at 390.

16        Plaintiffs also argue that the Agreement contains language that explicitly forecloses the

17   possibility of third-party beneficiaries.  Specifically, Plaintiffs argue that the phrase "parties

18   hereto," used in the arbitration provision and elsewhere in the Agreement, is meant to exclude

19   third parties from benefitting from the Agreement. *See e.g.*, (Dkt. #7 ), Ex. 2, ¶ 26 ("In the event

20   of any dispute…**the parties hereto** shall use their best efforts to settle the dispute." (Dkt. # 17),

21   at 6 (citing (Dkt. # 7), Ex. 2, ¶ 26) (emphasis added by Plaintiffs)). Plaintiffs claim that other

22   language in the arbitration provision is further limiting: "Neither [Plaintiffs] nor SCI shall be

23   entitled to join or consolidate claims in arbitration by or against other individuals or entities…."

24   *Id*.  A plain reading of the Agreement does not support this interpretation, as the language only

25   defines the contracting parties and prevents them from bringing multi-party claims in arbitration.

26   Moreover, it is clear from a plain reading of the Agreement that performance "would necessarily

ORDER GRANTING MOTION TO DISMISS      -6-

and directly benefit" customers such as Defendant. *Rajagopalan*, 718 F.3d at 847 (quoting *Postlewait*, 106 Wash. 2d at 99). Nearly every paragraph of the Agreement describes the contours of the obligations Plaintiffs would have to their "customers." *See e.g.*, (Dkt. # 7), ¶¶ 13, 18, 19.  For these reasons, the Court finds that Defendant was a third-party beneficiary to the Agreement.

**C. Arbitrability**

Having determined that Defendant is a third-party beneficiary, the Court must consider whether the arbitration provision applies to this action.  As an initial matter, the Court must address whether the arbitrability of Plaintiffs' claims against Defendant is itself a question reserved for arbitration. "Whether a dispute as to arbitrability should be resolved by the court or an arbitrator depends upon whether the parties agreed to delegate that power to the arbitrator." *Brennan*, 2013 WL 2445430, at *4. "Unless parties 'clearly and unmistakably' delegate that power to an arbitrator, arbitrability is for the court, not the arbitrator, to decide." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).  Here, the arbitration clause is completely silent as to what entity is charged with deciding arbitrability. Such silence cannot constitute "clear[] and unmistakabl[e]" evidence of the parties' intent to submit the question of arbitrability to the arbitrator. *Id*. Therefore, it is for the Court to determine whether the scope of the arbitration provision applies to Plaintiffs' claims.

Because the Agreement is "'a contract evidencing a transaction involving commerce,' it is subject to the [Federal Arbitration Act]." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting the Federal Arbitration Act of 1925 (the "FAA"), 9 U.S.C. § 1). The parties do not challenge the validity of the Agreement, therefore, under the FAA, the Court is restricted to deciding only whether the dispute falls within the agreement to arbitrate. *Id*. at 1131. As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id*. The presumption in favor of arbitration "applies with particular force where… the arbitration clause is phrased in broad and general terms." *Wynn*

1   *Resorts, Ltd. v. Atl.-Pac. Capital, Inc*., 497 Fed. Appx. 740, 743 (9th Cir. 2012). "Stated

2   differently, to require arbitration, an aggrieved party's factual allegations need only touch matters

3   covered by the contract containing the arbitration clause." *Id*. (internal quotations omitted).

4       If the Court finds a valid arbitration agreement encompasses the disagreement at hand, the

5   FAA "leaves no place for the exercise of discretion by a district court," and instead mandates

6   "that district courts *shall* direct the parties to proceed to arbitration on issues as to which an

7   arbitration agreement has been signed." *Chiron*, 207 F.3d at 1130 (quoting *Dean Witter*

8   *Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)) (emphasis in original). "The party resisting

9   arbitration bears the burden of showing that the agreement does not cover the claims at issue."

10  *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013). Accordingly, the

11  Court must compare the terms of the arbitration provision to Plaintiffs' claims.

12      In this case, the arbitration clause is broad and far reaching: "[A]ny dispute, claim,

13  question, or disagreement arising from *or relating to* this agreement or the breach thereof… shall

14  be finally settled by arbitration in accordance with the Federal Arbitration Act." (Dkt. # 7), Ex.

15  2, ¶ 26 (emphasis added). The Ninth Circuit construes arbitration clauses that include phrases

16  like "relating to" broadly. *See e.g.*, *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708

17  F.2d 1458, 1464 (9th Cir. 1983) ("relating to" language in an arbitration provision extends

18  beyond disputes relating to the interpretation and performance of the contract itself).

19      Plaintiffs' Complaint alleges violations of various Washington wage and employment

20  statutes, while carefully avoiding any mention of the Agreement. (Dkt. #1). Plaintiffs' claims do

21  not require the existence of a formal contract, and "[t]he parties' characterization of their

22  employment relationship is not determinative." *Becerra v. Expert Janitorial, LLC*, 181 Wn.2d

23  186, 195 (2014).  Nevertheless, Plaintiffs allege that Defendant was a joint employer with SCI,

24  with the same responsibilities under the wage and employment statutes. Each of these statutes

25  creates liability for "employers" engaged in wage and employment abuses. In order to determine

26  whether a defendant is an "employer" for purposes of the wage and employment statutes,

1    Washington courts use an "economic reality" test that evaluates the employment relationship

2    "based upon the 'circumstances of the whole activity.'"   *Becerra*, 332 P.3d at 421 (quoting

3    *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

4         Although the Complaint does not reference the Agreement, Plaintiffs' allegations

5    describe an employment environment that would violate several of the Agreement's terms.

6    Plaintiffs allege Defendant exercised extensive control over their schedules and routes, and

7    prohibited Plaintiffs from delivering for other companies. (Dkt. # 1), ¶ 26. But under the

8    Agreement, Plaintiffs were granted the "right, in their discretion, to accept or reject assignments

9    from Customers and were "free to select their own routes or the order of their deliveries." (Dkt.

10   # 7), Ex. 2, ¶¶ 14, 16. At the heart of Plaintiffs' claims is their allegation that they were

11   misclassified as independent contractors, as opposed to employees. *See e.g.* (Dkt. #1), ¶ 23. But

12   Plaintiffs signed the Agreement, which provided that "[Plaintiffs] agree[] that no

13   employer/employee relationship is created under this Agreement as a result of the relationship

14   between SCI and the [Plaintiffs] or [their] Customers."  (Dkt. # 6, ¶ 6).

15        In analyzing Plaintiffs' claims that Defendant and SCI should face the same liability

16   under the wage and employment statutes, the Court cannot evaluate the "circumstances of the

17   whole activity" of Plaintiffs' employment, and Defendant's responsibilities without "touch[ing]

18   matters covered by the [Agreement]." *Id*. at 421 (quoting *Rutherford Food Corp. v. McComb*,

19   331 U.S. 722, 730 (1947)); *Wynn Resorts*, 497 Fed. Appx. at 743. While it is possible that

20   Plaintiffs' relationship with Defendant could be governed by another agreement between them,

21   Plaintiff does not allege as much.  The burden is on Plaintiffs to demonstrate that the Agreement

22   – and, thus, its arbitration provision – does not encompass their employment claims against

23   Defendant.  In the absence of any evidence to the contrary, the Court applies the strong

24   presumption in favor of abritrability and presumes that Plaintiffs' claims are arbitrable.

25        Plaintiffs make only one argument in support of their opposition, asserting that their

26   claims are beyond the scope of the arbitration provision because they entered into a contract only

ORDER GRANTING MOTION TO DISMISS         -9-

with SCI, and any dispute with Defendant is therefore necessarily beyond the Agreement. (Dkt. # 17), at 5-6.  Plaintiffs' argument would undermine the third-party beneficiary doctrine, which allows third parties to vindicate their rights and protect their interests under a given agreement, including the right to settle disputes in arbitration.  *See e.g.*, *Lonsdale*, 99 Wash. 2d 353, 361 (1983); *Geier v. m-Qube Inc*., 824 F.3d 797, 801 (9th Cir. 2016) (applying Washington law). The Court therefore declines to adopt Plaintiffs' argument. Because Defendant is a third-party beneficiary and Plaintiffs' claims touch upon matters in the Agreement, Plaintiffs' claims are arbitrable.

**D. Dismissal**

The Court finds that Defendant is a third-party beneficiary of the Agreement, and Plaintiffs' claims come within the scope of the Agreement's arbitration provision. "Under Ninth Circuit precedent, this Court has the discretion to decide whether to dismiss or stay pending arbitration in this case." *Brennan*, 2013 WL 2445430, at *8. Because the Court finds that arbitration is the proper forum for all of Plaintiffs' claims to be heard, it will grant Defendant's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) in favor of arbitration, and without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss in favor of arbitration (Dkt. # 6) is GRANTED.

DATED this 10th day of January, 2017.

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION TO DISMISS          -10-