# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ABDIRIZAQ EGE, ABDIRAHIM FARAH, and ABDULKADIR HASSAN, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPRESS MESSENGER SYSTEMS, INC., a Delaware corporation doing business as ONTRAC; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:16-CV-1167-RSL<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF UNDER RULE 60(b) |

This matter comes before the Court on plaintiffs' motion for relief under Federal Rule of Civil Procedure ("Rule") 60(b). Dkt. #36. For the following reasons, plaintiffs' motion is DENIED.

## **BACKGROUND**

Plaintiffs were commercial truck drivers for OnTrac, which operates a regional package delivery service. Dkt. #1-2 (Compl.) at ¶ 2. They brought various wage claims under Washington law. Each named plaintiff had entered into an Owner/Operator Agreement ("Agreement") with Subcontracting Concepts CT LLC ("SCI"), a transportation logistics company, between October 2011 and May 2014. Each Agreement contained an arbitration

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 1

provision. See Dkt. #23. OnTrac did not sign the Agreements, but argued that it was a third-party beneficiary to them, and that the arbitration provisions therefore applied to plaintiffs' wage and employment claims in their action. On January 10, 2017, this Court granted OnTrac's motion to dismiss and compel arbitration. Id. It concluded that OnTrac was a third-party beneficiary to the Agreements, that the Agreements were subject to the Federal Arbitration Act ("FAA"), and that the arbitration provision applied to the instant action. Id. at 4–10.

Plaintiffs timely appealed the Court's dismissal on February 9, 2017. Dkt. #25. On October 17, 2018, approximately four months after filing their opening brief with the Ninth Circuit, plaintiffs moved to stay the appeal based on a then-pending case before the Supreme Court, New Prime Inc. v. Oliveira, No. 17-340. Dkt. #37 (Banerjee Decl.) at ¶ 2; see Ex. A, Dkt. #36-1; see also Pls.' Opening Br., Ege v. Express Messenger Sys., Inc., No. 17-35123, 2017 WL 2782383 (9th Cir. June 21, 2017). The Ninth Circuit denied the motion to stay and affirmed this Court's dismissal of the action on December 7, 2018. Dkt. #28. New Prime was decided on January 15, 2019. New Prime Inc. v. Oliveira, 139 S. Ct. 532 (2019). Plaintiffs now seek reconsideration of the dismissal of their action in light of the Supreme Court's decision in New Prime. Dkt. #36.

In New Prime, Mr. Oliveira filed a class action lawsuit arguing that New Prime, an interstate trucking company, denied its independent contractor drivers lawful wages. New Prime, 139 S. Ct. at 536. The contracts between the drivers and New Prime mandated arbitration, but Mr. Oliveira argued that the FAA did not authorize the court to enter an order compelling it, because § 1 of the FAA states that "'nothing herein' may be used to compel arbitration in disputes involving the 'contracts of employment' of certain transportation workers." Id. (citing 9 U.S.C. § 1). Mr. Oliveira argued that his agreement with New Prime to drive trucks qualified as a "contract[] of employment of … [a] worker[] engaged in … interstate commerce" and that the district court therefore lacked authority to compel arbitration. Id. (quoting 9 U.S.C. § 1). The Supreme Court held that, first, a "court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." Id. at

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 2

537. In order "to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2." Id. Second, it held that "Congress used the term 'contracts of employment' in a broad sense to capture any contract for the performance of *work* by *workers*." Id. at 541 (emphasis in original). This includes contracts with independent contractors. Id. Plaintiffs now argue that the dismissal of their case should be reconsidered.

## DISCUSSION

### A. The Law of the Case Doctrine

The law of the case doctrine "requires courts to follow a decision of an appellate court on a legal issue in all later proceedings in the same case." United States v. Cade, 236 F.3d 463, 467–68 (9th Cir. 2000) (citation omitted). OnTrac argues that the Ninth Circuit's decision on appeal bars this litigation. Dkt. #38 at 6–7.

There is an exception to the law of the case doctrine "where intervening controlling authority makes reconsideration appropriate." United States v. Bad Marriage, 439 F.3d 534, 538 (9th Cir. 2006) (citing Minidoka Irrigation Dist. v. Dep't of Interior, 406 F.3d 567, 573 (9th Cir. 2005)). Plaintiffs assert that this exception applies here, arguing that dismissal of their case should be reconsidered following the Supreme Court's decision in New Prime. The Ninth Circuit did not expressly consider the merits of the § 1 exemption issue in its decision, though OnTrac argues it decided "by necessary implication" that the outcome of New Prime would not impact plaintiffs' appeal when it summarily denied plaintiffs' motion to stay. See Dkt. #38 at 6-8; see also Snow-Erlin v. United States, 470 F.3d 804, 807 (9th Cir. 2006) (citing Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990)); Dkt. #28 at 4. Because the Ninth Circuit's disposition leaves the reasoning underlying its denial of the motion to stay ambiguous, the Court will consider the merits of plaintiffs' Rule 60(b) motion.

### B. Entitlement to Relief under Rule 60(b)

Rule 60(b) provides,

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 3

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The Rule "is meant to be remedial in nature and therefore must be liberally applied." United States v. Elmore, No. C05-810JLR, 2009 WL 10651377, at *3 (W.D. Wash. Apr. 29, 2009) (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)). "Motions under Rule 60 must be brought 'within a reasonable time.'" Patu v. Albert, No. C15-0721JLR, 2017 WL 2729862, at *2 (W.D. Wash. June 26, 2017) (quoting Fed. R. Civ. P. 60(c)(1)).

A Rule 60(b)(6) motion may be predicated on an intervening change in the law. Phelps v. Alameida, 569 F.3d 1120, 1132 (9th Cir. 2009). "The primary inquiry on any motion under Rule 60(b)(6) is whether there are 'extraordinary circumstances' that warrant vacating the judgment." United States v. Washington, 19 F. Supp. 3d 1317, 1373 (W.D. Wash. 2000) (quoting United States v. Washington, 98 F.3d 1159, 1163 (9th Cir. 1996)). "[T]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." Phelps, 569 F.3d at 1133 (quoting Stokes v. Williams, 475 F.3d 732, 736 (6th Cir. 2007)).

In Phelps, the Ninth Circuit considered the two factors laid out by the Supreme Court in Gonzalez v. Crosby, 545 U.S. 524 (2005), and the four factors laid out by the Eleventh Circuit

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 4

in <u>Ritter v. Smith</u>, 811 F.2d 1398 (11th Cir. 1987), in determining whether there were extraordinary circumstances justifying relief under Rule 60(b). <u>Phelps</u>, 569 F.3d at 1135. It noted that those cases did not "impose a rigid or exhaustive checklist." <u>Id.</u> Rather, the Rule "affords courts the discretion and power 'to vacate judgments whenever such action is appropriate to accomplish justice.'" <u>Id.</u> (quoting <u>Gonzalez</u>, 545 U.S. at 542). But it "'cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in the timeliness and finality' of judgments." <u>Id.</u> (quoting <u>Flores v. Arizona</u>, 516 F.3d 1140, 1163 (9th Cir. 2008)).

In <u>Gonzalez</u>, the Supreme Court considered (1) whether the intervening change in law overruled an otherwise settled legal precedent, and (2) the petitioner's diligence in pursuing review. <u>Id.</u> at 1136 (citing <u>Gonzalez</u>, 545 U.S. at 536, 537). Applying those factors to <u>Phelps</u>, the Ninth Circuit held, first, that the change in law "did not upset or overturn a settled legal principle." <u>Id.</u> Rather, the law was "decidedly *un*settled" at the time of the petition. <u>Id.</u> (emphasis in original). Second, it held that that Phelps had "demonstrated more diligence than [it] could ever reasonably demand from a *habeas* petitioner." <u>Id.</u> Both factors weighed in favor of granting relief under Rule 60. <u>Id.</u> at 1136–37. Under <u>Ritter</u>, the Eleventh Circuit considered (1) whether granting the relief sought would "'undo the past, executed effects of the judgment,' thereby disturbing the parties' reliance interest in the finality of the case," (2) the delay between the final judgment and the Rule 60(b)(6) motion, (3) the relationship between the original decision and the subsequent decision that represented a change in the law, and (4) principles of comity. <u>Id.</u> at 1137–40 (quoting <u>Ritter</u>, 811 F.2d at 1402). The Ninth Circuit in <u>Phelps</u> held that neither party had undergone any change in legal position due to the district court's judgment, that Phelps filed his petition promptly within four months of his judgment becoming final, that the intervening change in law directly overruled the decision for which reconsideration was sought and resolved a conflict among courts, and that it did not need to be concerned about upsetting the principles of comity as Phelps had sought reconsideration not of a judgment on the merits of his *habeas* petition, but of an erroneous judgment that prevented the court from

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 5

reaching the merits of that petition. Id. It concluded that Phelps' motion "demonstrate[d] the extraordinary circumstances necessary to grant relief under Rule 60(b)(6)." Id. at 1140.

The Ninth Circuit recently provided district courts with additional guidance for applying the six Phelps factors, particularly beyond the *habeas corpus* context. See Henson v. Fidelity Nat'l Fin., Inc., No. 18-56071, 2019 WL 6042821, at *1 (9th Cir. Nov. 15, 2019). In concluding that "many of the Phelps factors are relevant to the Rule 60(b)(6) analysis in the [non-*habeas* context]," Henson "reemphasize[d] that courts must consider all of the relevant circumstances surrounding the specific motion before the court to ensure that justice be done in light of all of the facts." Id. (citing Phelps, 569 F.3d at 1120). The Court is mindful of the additional guidance set forth in Henson and considers each Phelps factor in turn.

   *a. Change in the Law*

"The first Phelps factor considers the nature of the intervening change in law." Id. at *7 (citing Phelps, 569 F.3d at 1135-36). Plaintiffs argue that the law was not settled on whether the Court or an arbitrator should decide the applicability of a § 1 exemption or whether independent contractors fall under the § 1 exemption of the FAA. OnTrac does not dispute that the issue was not settled. Dkt. #38 at 5 ("OnTrac responded that a stay was improper because Plaintiffs could have argued, in this Court or on appeal, that the FAA exempted independent contractor agreements, especially as the question remained unsettled in this Circuit."); see also Oliveira v. New Prime, Inc., 857 F.3d 7, 12–13, 18 (1st Cir. 2017). New Prime, therefore, "did not upset or overturn a settled legal principle." Phelps, 569 F.3d at 1136.

However, in Henson, the Ninth Circuit clarified that analysis of the first Phelps factor may require more than a simple inquiry into whether the law at issue was settled. Henson, 2019 WL 6042821, at *7-9 ("[C]ourts considering this factor should not in rote fashion rely on the conclusion from a different context that any particular type of change in the law favors or disfavors relief."). "[A] district court should weigh whether the specific nature of the change in

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 6

the law in the case before it makes granting relief more or less justified under all of the circumstances." Id.

While in Henson, "the court had to assess whether to grant relief in the context of an unfavorable change in the law," this case is more analogous to Phelps, as "the [C]ourt must decide whether to reopen a case to grant the benefit of a favorable change of law." Id. Still, the Court finds certain change in law considerations discussed by Henson persuasive in this context. First, rather than finding the "circumstances surrounding the change of law . . . extraordinary" the Court considers New Prime "an otherwise routine Supreme Court decision resolving an open circuit split." Cf. id. at *9; see also, e.g., Alvarado v. Pacific Motor Trucking Co., No. EDCV 14-0504-DOC(DTBx), 2014 WL 3888184, at *4-5 (C.D. Cal. Aug. 7, 2014), aff'd, 672 F. App'x 687 (9th Cir. 2016) (describing "split of authority" surrounding the applicability of the § 1 exemption to independent contractors); Oliveira, 857 F.3d at 12-13, 17-20 (identifying inconsistencies in the weight of authority on the § 1 exemption issue). Plaintiffs "should have known that the law might change" given the existing split of authority on the § 1 exemption issue. Cf. Henson, 2019 WL 6042821, at *8. They should not have been "blindsided by the change in law"—rather, they could have avoided the predicament they now face by raising the § 1 exemption issue before the Court when opposing OnTrac's motion to dismiss. Id.

Given the competing considerations described above, the Court finds the change in law factor neutral. While a favorable change to unsettled law may generally weigh in favor of granting plaintiffs' requested relief, the circumstances surrounding the change in law here were not particularly extraordinary. Considering these circumstances, plaintiffs were not "blindsided" and should have raised the § 1 exemption before the Court in the first instance. Id.

### b. *Plaintiffs' Diligence in Pursuing Relief*

"The second Phelps factor is the [plaintiffs'] exercise of diligence in pursuing [their] claim for relief." Id. at *9 (citing Phelps, 569 F.3d at 1135-36). Plaintiffs point out that they filed their motion about a month after the Supreme Court decided New Prime. Dkt. #36. But, as

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 7

described above, they failed to raise the § 1 exemption issue before this Court in opposing OnTrac's motion to dismiss, despite the existing "split of authority" on the issue. See Dkt. #38 at 9-11 (quoting Alvarado, 2014 WL 3888184, at *4). And plaintiffs did not cite New Prime in their Opening Brief before the Ninth Circuit, filed more than a month after the First Circuit's decision in New Prime. Pls.' Opening Br., Ege v. Express Messenger Sys., Inc., 2017 WL 2782383 (9th Cir. Jun. 21, 2017); see also Oliveira, 857 F.3d at 7. New Prime petitioned for certiorari on September 6, 2017. Pet. for Writ. of Cert., New Prime Inc. v. Oliveira, No. 17-340, 2017 WL 3948478 (U.S. Sept. 6, 2017). Yet in their Reply Brief filed before the Ninth Circuit a month later, plaintiffs still did not mention New Prime. Pls.' Reply Br., Ege v. Express Messenger Sys. Inc., No. 17-35123, 2017 WL 4586016 (9th Cir. Oct. 11, 2017). Certiorari was granted on February 26, 2018. New Prime Inc. v. Oliveira, 138 S. Ct. 1164 (2018). Plaintiffs did not file their motion to stay the appeal pending the Supreme Court's decision in New Prime until almost eight months later, on October 17, 2018. Banerjee Decl. at ¶ 2.

Plaintiffs were not diligent. Lopez, 678 F.3d at 1136 (noting that the petitioner "had never pursued the theory that he now advances"). Far from "press[ing] all possible avenues of relief," they ignored several of them. Phelps, 569 F.3d at 1137; cf. Henson, 2019 WL 6042821, at *10 (emphasis added) (noting that "[i]n Phelps, because the petitioner sought the benefit of a favorable change in the law, the fact that petitioner had been *diligent in advancing* the legal position that was ultimately adopted by that change in law was relevant to the equitable considerations implicated by a Rule 60(b)(6) motion"). Here, plaintiffs' lack of diligence weighs against granting their requested relief under Rule 60(b). Cf. Gonzalez, 545 U.S. at 537 ("The change in the law … is all the less extraordinary in petitioner's case, because of his lack of diligence in pursuing review of the … issue. At the time [the new case] was decided, petitioner had abandoned any attempt to seek review of the District Court's decision on this … issue.").

### c. Reliance Interest in Finality of the Case

"The third factor . . . considered in Phelps is whether granting the Rule 60(b) motion for relief from judgment would upset 'the parties' reliance in the finality of the case.'" Henson,

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 8

2019 WL 6042821, at *10 (quoting Phelps, 569 F.3d at 1137). Here, the Court's dismissal has not "caused one or more of the parties to change [its] legal position in reliance on that judgment." Phelps, 569 F.3d at 1138. There is no indication that any "past effects of the judgment . . . would be disturbed if the case were reopened for consideration on the merits." Henson, 2019 WL 6042821, at *10 (internal quotation marks omitted) (quoting Phelps, 569 F.3d at 1138). This weighs in favor of granting plaintiffs' requested relief. Phelps, 569 F.3d at 1137.

### d. *Delay Between the Judgment and the Rule 60(b) Motion*

"The fourth Phelps factor examines the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." Henson, 2019 WL 6042821, at *11 (internal quotation marks omitted) (quoting Phelps, 569 F.3d at 1138; Ritter, 811 F.2d at 1402). "We consider the length of time between when the original judgment . . . became final *after* appeal, and the time at which a party filed its motion for Rule 60(b)(6) relief." Id. (alterations omitted) (quoting Phelps, 569 F.3d at 1138 n.21). Plaintiffs filed this motion approximately two months after the Ninth Circuit's memorandum affirming this Court's dismissal. Dkt. #36. In Ritter, a delay of nine months between the judgment becoming final and the Rule 60(b)(6) motion being filed was found to be "very brief." Ritter, 811 F.2d at 1402. In this case, the delay factor weighs in favor of granting plaintiffs' relief. See Lopez, 678 F.3d at 1131, 1136; Henson, 2019 WL 6042821, at *11.

### e. *Relationship Between the Original Judgment and the Change in the Law*

"The fifth Phelps factor looks to the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law." Henson, 2019 WL 6042821, at *12 (internal quotation marks and citations omitted). "[I]f there is a close connection between the two cases, the court will be more likely to find the circumstances sufficiently extraordinary to justify disturbing the finality of the original judgment." Id. (alterations omitted) (quoting Phelps, 569 F.3d at 1139; Ritter, 811 F.2d at 1402).

Here, the connection between New Prime and plaintiffs' action is not as straightforward as the cases in Phelps and Henson. See Lopez, 678 F.3d at 1137 ("[T]he connection between [the petitioner]'s current theory and the intervening change in law does not present the sort of identity that we addressed in Phelps."); see also Henson, 2019 WL 6042821, at *12. Plaintiffs argued that OnTrac intentionally misclassified them as independent contractors instead of employees to avoid complying with various statutory provisions. They did not argue that they were entitled to the exemption under § 1 even though they were independent contractors. The Court therefore found that the Agreements were "contract[s] evidencing a transaction involving commerce" and were subject to the FAA. Dkt. #23 at 7 (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). Under New Prime, independent contractors are included in the ambit of "contracts of employment" under the exemption in § 1, and the Court must first decide whether the exemption applies before ordering arbitration. New Prime, 139 S. Ct. at 536–41. The intervening change in law in New Prime did not "directly overrule[] the decision for which reconsideration [i]s sought." Phelps, 569 F.3d at 1139; see Lopez, 678 F.3d at 1137 (noting that the petitioner's original claim "failed for an entirely separate reason" from that at issue in the intervening case). This factor weighs against granting plaintiffs' requested relief.

    *f. Comity*

The Phelps comity factor is inapplicable here and thus does not inform the Court's analysis. See Henson, 2019 WL 6042821, at *13 (quoting Phelps, 569 F.3d at 1139) ("[C]onsiderations of comity 'between the independently sovereign state and federal judiciaries' that we discussed in Phelps do not apply here at all, because this case does not involve a federal habeas petition that challenges a state conviction.").

    *g. Additional Considerations*

In Henson, the Ninth Circuit reiterated that the Phelps factors were "not meant to 'impose rigid or exhaustive checklist,'" and advised district courts "applying [the Phelps factors] in an

entirely new context . . . [to] assess how that different context might alter the calculus of the factors' application, and whether those factors adequately capture all of the relevant circumstances." Henson, 2019 WL 6042821, at *6-7 (quoting Phelps, 569 F.3d at 1133, 1135). The Ninth Circuit accordingly analyzed several "additional considerations" arising from the specific facts of Henson. Id. at *13-14. Two of these additional considerations warrant attention here as well.

In Henson, the Ninth Circuit raised "the importance of heeding the intent of the rulings of federal appellate courts." Id. at *13. Contrary to facts of Henson, the Ninth Circuit presumably contemplated New Prime when plaintiffs' raised the applicability of the pending Supreme Court decision in their motion to stay their appeal. Dkt. #28 at 4; cf. Henson, 2019 WL 6042821, at *13. Although the Ninth Circuit summarily denied plaintiffs' motion to stay, its decision implies that it determined New Prime would not impact plaintiffs' appeal when plaintiffs never raised the § 1 exemption issue before this Court. Cf. Henson, 2019 WL 6042821, at *13 (finding it unlikely that the Ninth Circuit would intend practical effect of its earlier decision in light of the subsequent Supreme Court decision raised in petitioner's Rule 60(b)(6) motion). This consideration therefore weighs against granting plaintiffs' requested relief.

The Court also considers "how best to stay true to the Supreme Court's ruling" in New Prime. Id. Although New Prime instructs courts to consider whether the FAA's § 1 exemption applies prior to ordering arbitration, nothing in the Supreme Court's reasoning suggests this Court should vacate its dismissal to decide the § 1 exemption issue when plaintiffs failed to raise it before the Court despite a known split of authority on the issue. New Prime, 139 S.Ct. at 532. In these circumstances, the Court is not persuaded that denying plaintiffs their requested relief would directly contravene the Supreme Court's decision in New Prime. Cf. Henson, 2019 WL 6042821, at *13.

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 11

## **CONCLUSION**

"Ultimately, in evaluating the motion, the district court's overriding concern should be 'the incessant command of the court's conscience that justice be done in light of all the facts.'" Phelps, 569 F.3d at 1124 (quoting Stokes, 475 F.3d at 736). The law was unsettled at the time of the Court's dismissal, the delay between the final judgment in this matter and the instant motion was minimal, and reconsideration would not undermine any reliance by the parties on the finality of the case. Although these considerations weigh in favor of granting relief, at nearly every stage of this case plaintiffs failed to set a "sterling example of diligence" in pursuing their requested relief. Cf. Id. at 1136-37. Further, and in part due to plaintiffs' lack of diligence, New Prime does not have a "direct relationship" with this Court's dismissal, because plaintiffs failed to advance the § 1 exemption argument before it. Id. at 1139. In denying plaintiffs' requested relief, the Court would not frustrate the intentions of the Ninth Circuit or directly contravene the Supreme Court's reasoning in New Prime. See Henson, 2019 WL 6042821, at *13.

The Court, having weighed all relevant considerations, finds plaintiffs have not demonstrated the "extraordinary circumstances necessary to grant relief under Rule 60(b)(6)." Phelps, 569 F.3d at 1140; see also Henson, 2019 WL 6042821, at *14-15. Accordingly, plaintiffs' Motion for Relief Under Rule 60(b) (Dkt. #36) is DENIED.

DATED this 9th day of December, 2019.

Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION
FOR RELIEF UNDER RULE 60(b) - 12